HARRY GARCÍA DOMINICCI, JOSÉ M. TEJADA, OSCAR GARCÍA FIGUEROA, ORLANDO REVERÓN y CLEMENTE MATTEI PADILLA, peticionarios, *v.* TRIBUNAL DE DISTRITO DEL DISTRITO JUDICIAL DE SAN JUAN, PUERTO RICO, HON. WILLIS RAMOS VÁZQUEZ, JUEZ, demandado; PUEBLO DE PUERTO RICO, interventor.

Núm. 1.—*Sometido:* Noviembre 10, 1949. *Resuelto:* Marzo 31, 1950.

*Francisco Hernández Vargas,* abogado de los peticionarios; *Hon. Procurador General Interino José C. Aponte, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr., Fiscal Auxiliar,* abogados de El Pueblo, interventor.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Los peticionarios fueron sentenciados por la Corte Municipal de Río Piedras por un supuesto delito de reunión ilícita. Apelaron para ante el Tribunal de Distrito de San Juan, el cual los declaró culpables y les impuso una multa de veinticinco dólares o en su defecto que cumplieran un día de cárcel por cada dólar de multa que dejaran de pagar. Para revisar la sentencia expedimos auto de *certiorari.* Como el error señalado se circunscribe a que la denuncia no aduce hechos constitutivos del delito de reunión ilícita, procede ante todo exponer lo pertinente de la denuncia para examinarla a la luz de la ley que define el delito que se alega infringido. La denuncia en lo pertinente expone:

". . . . que en 23 de septiembre de 1948, alrededor de las once y media de la mañana. . . . en la calle Muñoz Rivera de Río Piedras, . . . . los acusados [nombrándolos] y otras personas más, allí y entonces, ilegal, voluntaria y maliciosamente, se reunieron y juntaron ilícitamente, para protestar de actuaciones del Rector de la Universidad de Puerto Rico, Sr. Jaime Benítez, realizando dicho acto tumultuosa, violenta y desordenadamente, con fuertes e inusitados gritos, silbidos, abucheos, y exclamacio-

nes en voz estentórea, constituyéndose los aquí acusados y sus asociados en una manifestación escandalosa de alrededor de quinientas, (500) personas, encaminando sus pasos por la referida calle Muñoz Rivera, en dirección a la Universidad de Puerto Rico, con el fin de perturbar el orden en dicho centro docente y al ser requeridos por el denunciante, que es y era para la fecha de los hechos un oficial de la Policía Insular, que se encontraba allí en funciones oficiales como tal, y por otros agentes del orden público que se encontraban también presentes y en funciones oficiales, para que se desviaran por la calle José de Diego o por la Calle Robles, ya que no les estaba permitido llegar ni acercarse a la Universidad de Puerto Rico y además habían paralizado totalmente el tránsito por la Calle Muñoz Rivera, los aquí acusados y sus asociados, desatendieron, desacataron y desafiaron violentamente el indicado requerimiento y las órdenes al efecto dadas por la Policía Insular, continuando su marcha escandalosa y tumultuosa por la referida calle Muñoz Rivera, primero, y sentándose luego la mayor parte de los manifestantes en la misma calle y en sus aceras, cubriéndola totalmente de acera a acera, prolongando así los acusados y sus asociados, la paralización total del tránsito alrededor de media hora al final·de la cual intentaron una vez más la continuación de su marcha en forma violenta por lo que tuvieron que ser finalmente dispersados por el denunciante y los demás policías que estaban presentes, dando lugar los acusados y sus asociados con su conducta a que se perturbara como se perturbó gravemente el orden y la paz y tranquilidad de todo el vecindario.

"Hecho contrario a la ley y a la Paz y Dignidad de el Pueblo de Puerto Rico."

El delito de reunión ilícita está definido por el artículo 362 del Código Penal, según aparece en la Compilación de los Estatutos Revisados y Códigos de Puerto Rico, ed. 1911, pág. 967, en la siguiente forma:

"Si dos o más personas se reunieren para cometer un acto ilegal, separándose después sin realizarlo, o sin llevar adelante su ejecución o ejecutaren un acto legal tumultuosa o desordenadamente, las personas así reunidas constituirán una reunión ilícita."

Podría argüirse que como la denuncia alega que la reunión se llevó a cabo "tumultuosa, violenta y desordenada-

mente", sigue la letra del estatuto y por consiguiente aduce hechos constitutivos del delito definido en el artículo 362. Con todo, si leemos la denuncia en su totalidad, advertiremos que en la misma se expone en qué consistió la alegada conducta "tumultuosa, violenta y desordenada", a saber: En lanzar "fuertes e inusitados gritos, silbidos, abucheos y exclamaciones en voz estentórea" y que al ser requeridos por la policía para que se desviaran por otra calle, los manifestantes desacataron la orden de la policía continuando su marcha por la calle Muñoz Rivera, sentándose luego la mayor parte de ellos en dicha calle y en sus aceras cubriéndola totalmente de un lado a otro, paralizando así el tránsito por dicha vía pública durante media hora, siendo luego dispersados por la policía. De manera, pues, que debemos considerar la denuncia a la luz de los hechos que el denunciante interpretó como constitutivos de la conducta tumultuosa o desordenada a que se refiere el artículo 362 del Código Penal.

Se observará que el artículo 362 idéntico al 407 del Código Penal de California tiene dos modalidades, a saber: (1) Cuando la reunión tiene por objeto la comisión de un acto ilegal y las personas se separan sin realizarlo o sin llevar adelante su ejecución; y (2) cuando el objetivo es la realización de un acto legal de una manera tumultuosa o desordenada.

Con arreglo a la denuncia, el propósito de la reunión fué protestar de las actuaciones del Rector de la Universidad de Puerto Rico que es un funcionario público; pero la reunión según se alega, se llevó a cabo de una manera tumultuosa y desordenada. No cabe duda que el objetivo de la reunión, el reunirse para protestar de las actuaciones de un funcionario público, es un acto legal garantizado por el artículo 2 de la Ley Orgánica [1] y por la sección 4 de la Ley Definiendo

(1) El artículo 2 de la Ley Orgánica, en lo pertinente, prescribe: "No se aprobará ninguna ley restringiendo . . . . . el derecho del pueblo a reunirse en asamblea pacíficamente y pedir al Gobierno la reforma de los abusos."

los Derechos del Pueblo, aprobada el 27 de febrero de 1902. [2] (Compilación de los Estatutos Revisados y Códigos de Puerto Rico, ed. 1911, pág. 64.)

Como ya hemos indicado, el artículo 362 fué copiado del 407 del Código Penal de California y los tribunales de aquel estado han resuelto que el artículo 407 es reiterativo de las disposiciones de la Ley Común en lo que respecta al delito de reunión ilícita y que por consiguiente los elementos integrantes de ese delito bajo la Ley Común deben entenderse incluídos en el artículo 407 del Código Penal. *People. v. Kerrick*, 261 P. 756 (Cal., 1927).

Veamos ahora en qué consistía el delito bajo la Ley Común. En *Reg.* v. *Graham*, 16 Cox C. C. pág. 427, se dijo:

"Ahora con respecto a la reunión ilícita, ¿qué es una reunión ilícita? La definición ha sido expuesta por las más respetables autoridades en estos términos: 'Una reunión ilícita es una reunión de personas con la intención de llevar a cabo cualquier propósito común, . . . legal o ilegal, en tal forma que dé motivo a personas valientes del vecindario para temer una alteración de la paz.' " [3]

Y en *State* v. *Butterworth*, 142 A. 57 (N. J., 1928) se dice:

"En realidad en todos los casos bajo la Ley Común donde la acusación es por reunión ilícita, invariablemente aparece que ha habido una conducta tumultuosa, acometimientos, agresiones y la comisión de actos constitutivos de una amenaza a la vida y a la propiedad."

De los hechos. expuestos en la denuncia, no resulta que hubiera motivos suficientes para temer amenaza a la vida ni a la propiedad. Los actos que se imputan consisten de abucheos, exclamaciones en voz estentórea y silbidos, alegán-

---

[2] La sección 4 de la Ley Definiendo los Derechos del Pueblo dice: "El Pueblo de Puerto Rico tendrá el derecho de reunirse pacíficamente para el bien común, y de acudir, por medio de petición o queja razonada, a los que han sido investidos de los poderes del gobierno, en solicitud de que se le remedien perjuicios."

[3] El párrafo transcrito fué citado con aprobación en *State* v. *Butterworth*, 142 A. 57 (N.J., 1928).

dose además que los manifestantes desobedeciendo las órdenes de la policía para que se desviaran por la calle Robles, continuaron por la calle Muñoz Rivera sentándose luego en la misma, cubriéndola de una acera a la otra, obstruyendo el tránsito por dicha calle durante media, hora.

La naturaleza de cada acto depende de las circunstancias en que se realice. Quizás si estos mismos actos se hubieran realizado en una tranquila aldea cuyos vecinos no estuvieran acostumbrados al bullicio y al ruido, su paz y tranquilidad pudieran haberse alterado. Pero los sucesos se desarrollaron en la ciudad de Río Piedras, donde tiene su sede la Universidad de Puerto Rico con más de cinco mil estudiantes. Y como se dijo en *Pueblo* v. *Kerrick*, supra, págs. 759–60:

"No toda reunión donde haya conducta violenta, escandalosa y tumultuosa puede calificarse de reunión ilícita, aunque ésa sea la letra del estatuto. Es especialmente peligroso establecer tal doctrina en un país donde constantemente se están celebrando mítines para cualquier fin concebible, frecuentemente acompañados de mucho ruido y excitación. En esta época del año en nuestro país en casi toda aldea y especialmente en toda ciudad de cualquier tamaño, justas entre la juventud de las escuelas y colegios se llevan a cabo, las cuales no podrían caracterizarse de otro modo que de violentas, escandalosas y tumultuosas. Sin embargo, las comunidades no se alarman y la paz pública no se pone en peligro. Nadie por un momento caracterizaría juegos de 'foot ball' en altas escuelas y colegios como asambleas ilícitas. El estatuto tiene por objeto evitar 'cualquier alteración tumultuosa de la paz pública por "dos o más personas" que no persigan un fin ostensiblemente legal o constitucional, reunidas bajo tales circunstancias y comportándose de tal manera que constituyan tal peligro a la paz pública y tranquilidad, que inspire terror, alarma y consternación en el vecindario'. *In re Charge to Grand Jury*, 4 Pa. L. J. 29. El jurado debería considerar conforme leemos otra vez en Wharton's *Cr. Law*, sec. 1851, 'Al determinar la cuestión de terror. . . . si hombres razonables y valientes, jefes de familia, tuvieran bajo las circunstancias, motivos para temer; y al examinar esto es necesario tomar en cuenta la hora en que se celebró la reunión, el lenguaje usado por ellos así como los actos realizados.' "

No podemos perder de vista que las personas reunidas se proponían hacer uso del derecho constitucional de solicitar remedio a sus ,alegados agravios. Refiriéndose a la importancia del derecho de reunión garantizado por la Primera Enmienda a la Constitución de los Estados Unidos, dijo el juez Story:

"Parecería innecesario proveer expresamente este derecho cuando se trata de una forma republicana de gobierno, pues dicho derecho surge de la naturaleza misma de su estructura y sus instituciones. Sería imposible negarlo mientras el espíritu de libertad no haya totalmente desaparecido y el pueblo se haya sumido en tal grado de servilismo y degradación que lo incapacite para ejercitar cualquiera de los privilegios de los hombres libres." Story *on the Constitution*, (5ª ed.), sec. 1894.

 Por otro lado, el Estado tiene derecho a legislar para el mantenimiento del orden público y es nuestro deber sostener ambos derechos, el del gobierno y el del pueblo hasta donde fuere posible; pero el derecho del pueblo a reunirse para remediar agravios sólo puede sacrificarse cuando el orden público esté realmente en peligro y no cuando meramente sea concebible que pueda ser ligeramente afectado. Comparados ambos derechos, el de reunión que tiene el pueblo y el del Estado de mantener el orden público, no hay duda que el derecho de reunión debe pesar mucho. *Thomas* v. *Collins*, 323 U. S. 516 (1945).

Considerados a la luz de los principios enunciados, los actos que en la denuncia se caracterizan de violentos, tumultuosos y desordenados, incluyendo el haberse obstruído el tránsito en la forma expresada, que en realidad no indica disposición a recurrir a la violencia, opinamos que el derecho de reunión garantizado por el artículo 2 de la Ley Orgánica y la sección 4 de la Ley Definiendo los Derechos del Pueblo, es decisivo del presente caso y en consecuencia, debemos declarar que la denuncia no aduce hechos constitutivos del delito de reunión ilícita.

*Procede, por lo expuesto, revocar la sentencia recurrida y absolver libremente a los acusados aquí peticionarios.*

El Juez Asociado Sr. Snyder está conforme con el resultado.

El Juez Asociado Sr. Negrón Fernández se inhibió.